UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| KELLY D. WARFIELD, | ) | CIV.  07-5026-AWB |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER DISMISSING CASE |
| | ) | |
| DOUGLAS L. WEBER, Warden, | ) | |
| South Dakota State Penitentiary; | ) | |
| and STATE OF SOUTH DAKOTA, | ) | |
| | ) | |
| Respondents. | ) | |

On March 26, 2007, Petitioner filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and a request for an evidentiary hearing. Docket 1.  The Government filed a motion to dismiss the petition.  Docket 20.  On February 4, 2008, this Court granted in part and denied in part Defendant's motion to dismiss.  Docket 54.  The Government has filed its response to Petitioner's § 2254 petition.  Docket 65.  For the reasons stated below, the Court denies Petitioner's motion for an evidentiary hearing and dismisses Petitioner's petition for writ of habeas corpus.

**BACKGROUND**

On September 5, 2003, Petitioner was convicted in Pennington County of felony kidnapping, felony first degree burglary, felony second degree rape, and misdemeanor stalking.  He was sentenced on October 6, 2003, and the judgment of conviction was signed a week later, on October 13, 2003.

On March 27, 2007, Petitioner filed a state habeas petition with the South Dakota Supreme Court.  Case No. 24478.  That petition included numerous

complaints of ineffective assistance of counsel.  On May 14, 2007, the South
Dakota Supreme Court denied this petition without comment.  Petitioner filed a
motion for reconsideration on May 21, 2007, which was denied on June 15, 2007.

Petitioner filed a federal petition for writ of habeas corpus under 128 U.S.C.
§ 2254 with this court on March 26, 2007.  Within a few months after filing his §
2254 motion, Petitioner had fully exhausted his state remedies, as discussed
above.  This Court determined that the majority of Petitioner's claims were time-
barred under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).
Docket 54.  However, the Court did find that a few of Petitioner's claims fell within
the provisions of 28 U.S.C. § 2244(d)(1)(D), which states that AEDPA's one-year
period of limitation may begin on the date "on which the factual predicate of the
claim or claims presented could have been discovered through the exercise of due
diligence."  Concluding that "it may be true that Defendant did not discover the
factual predicate of *a few* of his potential claims until he received the complete file
from his attorney," the Court found that these claims were properly filed within
one year in accordance with AEDPA, and ordered the Government to respond to
those claims which related to allegations of his attorney's failure to investigate
possible witnesses and evidence.  Docket 54, page 11-12.  The Government has so
responded, and the matter is now ripe for disposition.

## STANDARD OF REVIEW

A writ of habeas corpus is available only to those persons "in custody
pursuant to the judgment of a State court only on the ground that he is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a).  That provision goes on to state:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim —
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law
> . . . ; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  In other words, Petitioner's success in claiming that a state

court's resolution of his ineffective assistance of counsel claims turns on his

success in showing that such a finding was contrary to clearly established federal

law or whether it involved an unreasonable application of such federal law.  See

Rompilla v. Beard, 545 U.S. 374, 380, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005).

The unreasonable application standard allows a writ to be issued "if the

state court identifies the correct governing legal principle from [the] Court's

decisions but unreasonably applies that principle to the facts of the petitioner's

case." Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389

(2000).  The state court's decision "must have been more than incorrect or

erroneous. [It] must have been 'objectively unreasonable.'" Wiggins v. Smith, 539

U.S. 510, 511, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (citation omitted).  "A

federal habeas court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court decision applied clearly

established federal law *erroneously or incorrectly*.  Rather, that application must

also be *unreasonable.*" <u>Morales v. Ault</u>, 476 F.3d 545, 550-51 (8th Cir. 2007) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).

Finally, regarding 28 U.S.C. § 2254(d)(2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not enjoy support in the record." <u>Morales</u>, 476 F.3d at 550; <u>see also</u> <u>Holman v. Kemna</u>, 212 F.3d 413, 417 (8th Cir. 2000).

## DISCUSSION

**Motion for evidentiary hearing**

Petitioner requests an evidentiary hearing on his habeas petition.  Docket 1. However, Petitioner is not entitled to a hearing "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007).  Here, even if the Court assumes as true all of Petitioner's allegations regarding his attorney's ineffective assistance of counsel, it finds that Petitioner is not entitled to relief under 28 U.S.C. § 2254.  Nothing presented at an evidentiary hearing would change this conclusion reached below that Petitioner has failed to meet his burden under <u>Strickland v. Washington</u>.  466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  <u>See</u> Rules Governing Section 2254 Cases 8(a).  Accordingly, Petitioner's request for an evidentiary hearing is denied.

**Ineffective Assistance of Counsel Claims**[1]

In his petition, Petitioner argues that his counsel's performance was deficient and thus deprived him of his constitutional right to counsel.  The South Dakota Supreme Court denied Petitioner's state habeas petition which included identical allegations of ineffective assistance of counsel.  See Case No. 24478. Thus, to be successful, Petitioner would have to demonstrate that this decision of the state court was contrary to clearly established federal law or involved an unreasonable application of federal law.  See Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991) (stating that habeas review of state convictions "is available only where errors of constitutional magnitude have occurred").

Here, the clearly established law is the rule in Strickland v. Washington.  In that case, the United States Supreme Court held that, to demonstrate ineffective assistance of counsel, a petitioner must first demonstrate that his counsel's conduct "fell below an objective standard of reasonableness" such that counsel did not exhibit the skill and diligence of a reasonable attorney in similar circumstances, and second that petitioner is sufficiently prejudiced in that there is a reasonable probability that the outcome of the trial would have been different but for counsel's errors.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also United States v. Acty, 77 F.3d 1054, 1059 (8th Cir. 1996).

---

[1] The Court notes that Respondent contests whether Petitioner exercised the "due diligence" required pursuant to 28 U.S.C. § 2254(d)(1)(D) to render the remaining claims timely under AEDPA.  Docket 65, page 5.  The Court finds that it need not decide whether Petitioner exercised the required due diligence in discovering the claims, since, even if Petitioner exercised due diligence, the claims must be dismissed on their merits.

The first Strickland prong requires that a Petitioner demonstrate that his attorney acted unreasonably under prevailing professional norms and in light of all of the circumstances, and "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 688, 689. Courts are to grant a strong presumption to decisions by defense counsel that are "reasonable trial strategy," and Petitioner has the burden of overcoming this presumption that trial counsel was competent and effective. English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990) and Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)). With regard to arguments that an attorney failed to properly investigate witnesses and evidence, strategic choices are "virtually unchallengeable" if made after "thorough investigation of the law and facts relevant to plausible options." Armstrong v. Kemna, 534 F.3d 857, 864 (8th Cir. 2008) (citing Strickland, 466 U.S. at 690). While strategic choices "resulting from lack of diligence in preparation and investigation are not protected by the presumption in favor of counsel," Id., there is "no per se rule that failure to interview witnesses constitutes ineffective assistance of counsel." Sanders v. Trickey, 875 F.2d 205, 209 (8th Cir. 1989). Finally, decisions whether to call witnesses are "virtually unchallengeable" as decisions regarding trial strategy. United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted).

Regarding Strickland's second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

6

To demonstrate the requisite prejudice, a petitioner "must establish a reasonable probability that he would have been acquitted absent the allegedly unprofessional error." Mansfield v. Dormire, 202 F.3d 1018, 1022 (8th Cir. 2000). "[T]he focus is on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Id. (citing Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)). Finally, prejudice is evaluated with regard to each independent claim of ineffective assistance of counsel, since petitioners "cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006); Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).

The Court takes up each of Petitioner's claims in turn.

### A-2, A-141:  Dr. Manning

Petitioner claims that his attorney failed to contact Dr. Manning regarding his examination of the victim, and Petitioner states twelve inquiries which should have been made of Manning. Docket 1, page 3-5 (A-2). Petitioner believes that Manning's testimony could have contributed to his consent defense to the charges against him. Id. These inquiries of Manning which Petitioner discusses would seem to solicit expert testimony from the physician regarding the rape, see id. at 3-4, (a)-(i), (k), as well as specific information from Manning's examination of Petitioner. Id. at 4, (j) and (l).

Petitioner does not demonstrate that the state court improperly applied federal law in rejecting his state habeas application on this ground. Petitioner has

7

failed to establish that any alleged failures of his attorney in investigating Manning fall outside of the general presumption of competence owed to attorneys. See Smith, 921 F.2d at 156. First, Petitioner's attorney was obviously aware of Dr. Manning as a potential witness, since he completed a portion of the victim's exam at the hospital. Trial Transcript Volume II at 96-97. Second, the Court does not believe that it is likely that Manning could have provided the type of expert testimony which Petitioner discusses, since the medical conclusions Petitioner is seeking go beyond the general expertise of an emergency room doctor. See Docket 1, pages 3-5; Fed. R. Evid. 702. For these reasons, Petitioner cannot show that his attorney's conduct was objectively unreasonable.

Further, the Court does not believe that Petitioner can demonstrate that he was sufficiently prejudiced to fulfill Strickland's second prong. Petitioner's attorney cross-examined Jessica Casner, the nurse who completed the majority of the sexual assault exam, inquiring into whether the victim's complaints and injuries could have been caused by consensual sex. Trial Transcript, Volume II, pages 105-09. Additionally, while Petitioner explicitly discusses which inquiries his attorney should have made of Manning, he fails to provide any details regarding what Manning's testimony would actually be. Such speculation is insufficient to undermine confidence in the outcome. Sanders, 875 F.2d at 210 (dismissing claim because petitioner did not make "a clear showing . . . that important potential testimony would have been discovered in an interview"). For these reasons, the state court's denial of habeas relief on this ground is not one of constitutional magnitude, and relief from this Court is similarly denied.

8

Finally, Petitioner also complains that Michael Polk failed to follow his instructions to investigate Manning regarding his opinion about whether or not the victim was raped.  Docket 1, page 173 (A-141).  Assuming that Polk served as Petitioner's attorney at some point during his criminal case, the Court denies relief for the same reasons stated above in relation to A-2.

### A-35, A-36:  Witnesses Regarding Similar Allegations Made by Victim

Next, Petitioner argues that his attorney "failed to investigate further and to obtain Darlene Moore as a witness to [the victim] making similar accusations towards another boyfriend . . . when he ended his relationship with [her]."  Docket 1, page 51 (A-35).  "This information would have established that [the victim] has motive to falsely make rape accusations . . . [and] that [the victim] has a history of lying about her other sexual relationship and was also lying about our sexual relationship and about being raped by me."  Id. at 52.

More generally, Petitioner goes on to argue that his attorney "failed to bring forth evidence and witnesses that [the victim] has made a rape accusation here in South Dakota and in California . . . and has experience in making rape accusations and testifying in Court to these rape accusations."  Id. at 52 (A-36).

The Court does not believe that the state court's denial of relief on this ground was the result of improperly applied federal law or was in violation of clearly established federal law.  First, Petitioner's attorney spent much time throughout the trial focusing on the truthfulness of the victim, especially her inconsistent statements regarding the nature of her relationship with Petitioner.  Trial Transcript, Volume I, page 132-133; Volume II, page 38-40; Volume III, page

9

140-144.  Second, Petitioner presented the defense of revenge in his case, testifying that after their consensual sex the victim asked Petitioner if he was still planning on going to North Carolina, and when he said no, she gave him a dirty look and went to the neighbors to call 911.  See e.g., Trial Transcript, Volume I, page 132; Volume III page 89-91.  Additionally, the Court does not believe that the state court would have allowed testimony regarding other allegations of rape, as that would have "[turned] the trial into one of the victim."   State v. Sieler, 397 N.W.2d 89, 92 (S.D. 1986) (finding that other rape allegations "must be demonstrably false before [they] can be considered relevant" under S.D.C.L. § 19-12-6).  Thus, the Court concludes that the state court's denial of habeas relief on this ground is not one of "constitutional magnitude," and thus relief from this Court is not warranted.  See Carter, 929 F.3d at 1296.

### A-37, A-38, A-39, A-50, A-52, A-55, A-60, A-63, A-70, A-144:  Testimony Regarding Romantic Relationship between Victim and Petitioner

Petitioner argues that his attorney's conduct in failing to investigate and obtain several witnesses "concerning [their] knowledge that [the victim] and myself were having a consensual sexual relationship" constituted ineffective assistance of counsel.  Docket 1, page 54 (Nicole Bader A-37); 55 (William Hanson A-38); 56 (the victim's mother A-39); 70 (Tina Mehrer A-50); 74 (Rhonda Eiesland A-52); 78 (Michael Baldwin A-55); 84 (victim's friend Leslie A-60); 96, 177 (failure to subpoena Petitioner's phone records to find witnesses A-70, A-144).

Because Petitioner was not sufficiently prejudiced by any of these alleged failures of his attorney, Petitioner cannot establish that the state court was in

10

error when it refused to grant relief on these grounds.  Defense counsel solicited

much testimony regarding Petitioner's relationship with the victim prior to the

events of June 3, 2002, both in cross-examination of the prosecution's witnesses

and in the defense's case-in-chief.  During deliberations, the jury had much

evidence to consider regarding the nature of the victim and Petitioner's

relationship.  Even if these additional witnesses would have provided testimony in

support of Petitioner's contention that he and the victim were in a romantic

relationship from September 2001 to June 2002, such evidence would have been

cumulative to the evidence presented at the trial.  Because of the amount of

evidence presented on this question, the Court does not believe that Petitioner

could show that the result of the trial was unreliable or that the proceeding was

fundamentally unfair due to the absence of any additional testimony.  See

Mansfield, 202 F.3d at 1022.  Therefore, Petitioner cannot demonstrate that the

state court's refusal of relief on this grounds was "objectively unreasonable," and

this Court similarly denies relief.  Garcia v. Mathes, 474 F.3d 1014, 1017 (8th Cir.

2007).

Petitioner also argues that his counsel was deficient in failing to investigate

his neighbors as potential witnesses to testify regarding the victim's overnight

stays at Petitioner's apartment.  Docket 1, page 88 (A-63).  Such evidence, he

argues, would have "attacked [the victim's] credibility and establish [sic]

reasonable doubt."  Id.  As stated above, such evidence would be cumulative to

that presented at trial, especially in light of the victim's admission that she stayed

overnight at Petitioner's house on several occasions and that she had a key to his

11

apartment.  Trial Transcript, Volume I, pages 220-21; Volume II, page 9-10.

Thus, counsel was not deficient in failing to present this additional evidence from

Petitioner's neighbors, nor was he prejudiced by the alleged failures.  Relief on this

ground is denied.

### A-41: Susan Hendrickson and Kathy Hersrud

Next, Petitioner complains that his counsel was constitutionally deficient for

failing to investigate testimony from Susan Hendrickson and Kathy Hersrud, both

Spiegel employees, "to rebut Regina Jone's [sic] testimony that [the victim] seemed

uncomfortable when I was working and sitting in the same work-cluster talking to

[the victim]."  Docket 1, page 59 (A-41).  Such testimony, argues Petitioner, "would

have established reasonable doubt to the stalking charge."  Id. at 60.

The Court denies relief on this ground.  There was a significant amount of

testimony considered by the jury on the stalking charge, including the victim's

testimony, which the jury appeared to find credible, and the audiotape of the

victim's answering machine.  Further, the majority of Jones's testimony involved

statements that Petitioner was written up for staying in the building after his shift

had ended, and that she remembered Petitioner speaking to the victim on repeated

occasions – accusations which Petitioner does not deny.  Trial Transcript, Volume

II, pages 225-26.  Jones testified only briefly about her observations that the

victim "seemed uncomfortable" around the Petitioner, and she admitted that she

did not know if Petitioner and victim were dating.  Id. at 227, 228.  In light of the

significant and persuasive evidence in this case regarding Petitioner's guilt on the

12

stalking charge, the Court finds that the state court was not in error to refuse relief on this ground, and this Court does likewise.

### A-42: Paula Spurgur

Petitioner argues that his counsel was ineffective for failing to investigate potential testimony by Paula Spurgur, a Spiegel employee, who would have testified that Regina Jones "personally did not like me." Docket 1, page 60 (A-42). Relief on this ground is denied, as Petitioner was not sufficiently prejudiced by this alleged failure. Even adopting the Petitioner's version of the facts, he does not deny that he was speaking with the victim while she was working and after his shift had ended, an apparent violation of Spiegel policy. Therefore, Jones' opinion about him is not sufficient to undermine confidence in the ultimate result of the case, as required by Strickland. 422 U.S. at 694.

### A-43:  Regina Jones' Testimony Regarding Proximity to Victim

Petitioner complains that his counsel "failed to examine Regina Jones, concerning, the fact that [the victim's] back was towards Regina, when Regina allegedly observed that [she] seemed uncomfortable to me." Docket 1, page 61. Since this alleged deficiency by Petitioner's counsel was readily observed by Petitioner at trial and known to him during his appeal, this claim should have been dismissed as time-barred in the Court's previous order.  See Docket 54. Therefore, as this claim is time-barred, relief on this ground is prohibited.  28 U.S.C. § 2244(d)(1).

**A-51: Rhonda Eiesland**

Petitioner claims that his counsel was constitutionally deficient for failing to investigate possible testimony from Rhonda Eiesland regarding alleged statements by the victim that the Petitioner has spent enough time in jail.  Docket 1, page 72 (A-51).  Petitioner contends that "no 'true' rape victim would ever say that the person who raped 'has spent enough time in jail,'" and that his attorney should have investigated further to see if the victim made additional statements to her coworkers that her allegations of rape were false.  Id. at 73.

Petitioner alleges only that the victim stated that he had spent enough time in jail, and he admits that he does not whether the victim made any statements to Eiesland that her rape accusations were false.  Id.  at 73.  Even assuming that such testimony would be admissible under the rules of evidence, the failure of Petitioner's attorney to solicit testimony from Eiesland that the victim believed Petitioner had spent enough time in prison is not sufficiently prejudicial to render the state court's decision on this claim erroneous.  The Court does not agree with Petitioner that such a statement, if made by victim, would cast sufficient doubt on her rape allegations to provide the prejudice required by Strickland that confidence in the guilty verdict was undermined.  466 U.S. at 694.  Further, mere speculation as to additional statements the victim might have made to Eiesland is also insufficient to demonstrate the requisite prejudice.  Sanders, 875 F.2d at 210.  Therefore, the Court denies relief on this ground.

Petitioner also argues that his counsel was deficient for failing to give this information regarding Eiesland's potential testimony to the State, as Petitioner

14

instructed.  Docket 1, page 72 (A-51).  Such conduct does not fall below an objective standard of reasonableness, as defense counsel has no duty or responsibility to share possibly exculpatory evidence with the state.  Relief on this ground is also denied.

### A-56: Breathalyzer Test

Petitioner argues that his attorney was constitutionally deficient in failing to examine law enforcement officers regarding the fact that he was given a breath test which indicated that he was not drunk when he was arrested.  Docket 1, page 79 (A-56).  Petitioner seems to say that such testimony would have cast him in a more favorable light and would have counteracted the State's picture of him to the jury.

The absence of such testimony was not sufficiently prejudicial to Petitioner so as to render the result of his trial unreliable or the proceedings against him fundamentally unfair.  <u>Mansfield</u>, 202 F.3d at 1022.  Given the significant evidence of the Petitioner's guilt of the charges against him, whether or not he was drunk at the time that police apprehended him over an hour after he left the victim's home does not create a reasonable probability that the outcome of the trial would have been different. Therefore, the state court properly denied relief on this ground, and this Court does likewise.

### A-58, A-59, A-132, A-144, A-145, A-65, A-66:  Victim's Reputation for Dishonesty

Petitioner makes several allegations that his attorney was ineffective for failing to present evidence from various witnesses about their personal knowledge

of the victim's "pattern of dishonesty" and her "vengeful nature" as well as her "reputation for dishonesty."  Docket 1, page 81-82 [Scott Rogers A-58]; see also id. at 83 [Shawn Thornhill A-59]; 164, 178 [failure to subpoena victim's phone records to identify potential witnesses A-132 and A-145]; 177 [failure to subpoena Defendant's phone records to identify potential witnesses A-144].  Petitioner also complains of his attorney's failure to pursue allegations that the victim was being investigated for credit card fraud and that she did not pay her federal taxes.  Id. at 91 [A-65, A-66].

The Court finds that the state court's refusal to grant relief on these grounds does not require action from this Court under 28 U.S.C. § 2254.  Of the testimony sought by Petitioner, only statements regarding the victim's character for truthfulness would be properly admissible, and such testimony could only be based on her reputation for truthfulness, not on specific instances related to her character for truthfulness.  See SDCL § 19-12-4 ("Evidence of a person's character or trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion" unless one of three exceptions applies); SDCL § 19-14-9 (providing that the credibility of a witness "may be attacked or supported by evidence in the form of opinion or reputation" so long as it refers "only to character for truthfulness or untruthfulness"); cf. SDCL § 19-14-10 (permitting cross-examination of a witness at the court's discretion regarding specific instances of his/her conduct "if probative of truthfulness").  Therefore, Petitioner was not prejudiced by any alleged failure to present evidence related to specific instances of untruthfulness, such as allegations of credit card fraud and

tax evasion, since that evidence would have been properly excluded under the rules of evidence.  The same is true for evidence regarding testimony of a potential witness' personal knowledge of the victim's pattern of dishonesty or vengeful nature, as such is impermissible character evidence under the applicable rules of evidence.  See Docket 1, page 83 (Scott Rogers testimony "on his personal knowledge of [the victim's] reputation and pattern of dishonesty"); id. at 83 (complaining of failure to investigate Shawn Thornhill who allegedly knew of specific instances of the victim's dishonesty).  Petitioner's attorney was not acting unreasonably by failing to investigate evidence which would not be admissible at trial.

The Court concludes that the trial court may have chosen to permit testimony regarding the victim's reputation in the community for honesty, under the applicable rules of evidence.  However, even if it was error for Petitioner's attorney to fail to introduce such evidence, Petitioner cannot demonstrate that he was sufficiently prejudiced under Strickland to warrant any remedy here, since the Court does not believe that the result of the trial was rendered unreliable or unfair as a result.  See Mansfield, 202 F.3d at 1018.  Petitioner's attorney repeatedly attacked the victim's credibility throughout the trial, exposed her misstatements about her relationship with the victim, and presented testimony from several witnesses contradicting her statements to law enforcement and at trial.  Despite this, the jury apparently chose to believe the victim's version of events.  The Court does not believe that the absence of testimony regarding the victim's community reputation for untruthfulness, even if it could have been

17

obtained and admitted into evidence, creates a reasonable probability that the outcome of the trial would have been different.  Therefore, the state court was not in error to deny relief on these grounds, and this Court does the same.

Petitioner also complains of his attorney's failure to call Scott Rogers as a witness to testify that he ended his relationship with the victim in 1997, and not in 2001, as the victim had claimed.  Docket 1, page 81 (A-58).  In light of the substantial evidence introduced during Petitioner's three-day trial, the Court does not believe that the small detail of the termination of Scott Rogers' relationship with the victim would cast doubt on her credibility and Petitioner's conviction to the extent required by Strickland to show prejudice.  Therefore, relief on this ground is denied.

### A-61:  Nicole Bader

Petitioner complains that his attorney was deficient for failing to obtain Nicole Bader as a witness to testify regarding statements the victim allegedly made to Bader that Petitioner cheated on the victim.  Docket 1, page 86 (A-61).  The Court has already found that Petitioner is not entitled to relief based on testimony Bader could have offered regarding the nature of the Petitioner's relationship with the victim.  Regarding these additional allegations that his attorney was deficient for failing to investigate and present testimony about Bader's conversation with the victim, the Court does not believe that such conduct is deficient, as such testimony is not relevant to the charges before the jury and is also hearsay which is likely inadmissible at trial.  Further, even if such testimony was admissible, Petitioner cannot show that its absence was prejudicial to him to the extent

required by Strickland. Therefore, the state court, in refusing to provide relief on these grounds, was not in error, and this Court similarly denies Petitioner's request for relief.

### A-62: Tina Mehrer

Petitioner also complains of his attorney's failure to investigate Tina Mehrer as a witness to testify about a conversation she had with Petitioner regarding a fight between the victim and Petitioner in November 2001. Docket 1, page 87 (A-62). Such evidence, states Petitioner, would have attacked the victim's credibility and established that the victim and Petitioner were in a romantic relationship. Id.

As stated above, such evidence regarding the nature of Petitioner and victim's relationship would be cumulative to that presented at trial, and thus its absence does not endanger Petitioner's eighth amendment right to counsel. Additionally, any evidence regarding a conversation between Petitioner and Mehrer is likely inadmissible hearsay, and therefore any alleged failure to investigate such potential testimony does not render his counsel's performance objectively unreasonable. Hence, relief on this ground is denied.

### A-69: Phone Records

Petitioner next complains that his attorney's failure to obtain his phone records from April 19-21, 2002, was constitutionally deficient. Docket 1, page 95 (A-69). Such evidence, claims Petitioner, would have proven that the victim repeatedly called his mother's house looking for him, and this would have attacked the victim's credibility and established reasonable doubt. Id.

19

The Court's review of the trial transcript reveals that Petitioner's attorney questioned the victim about phone calls she made from Petitioner's apartment to his mother in Nebraska.  Trial Transcript, Volume II, page 25-26.  When asked if she made the phone calls, the victim admitted that it's "possible" that she called his mother looking for him because she was worried about him, but that she did not recall because it was so long ago.  Id.  She also admitted that she talked to Petitioner's mother at some point during this time, and she said that she was worried about Petitioner because he was on a trip.  Id. at 26.  Additionally, in its case-in-chief, Petitioner presented testimony from Petitioner's mother that she talked to the victim on the phone during April 2001.  Id. at Volume III, page 8.  As Petitioner's attorney fully explored the nature of these phone calls during the trial and established that they occurred, the Court does not believe that the absence of any phone records was prejudicial in any way to the Petitioner, or that the failure to obtain such phone records was anything other than reasonable trial strategy.  English, 998 F.2d at 613.  For these reasons, relief on this ground is denied.

### A-76, A-83, A-93, A-94, A-98, A-134, A-137:  Failure to Obtain Additional Physical Evidence

Petitioner makes several complaints regarding his attorney's alleged failure to obtain additional physical evidence.  First, Petitioner states that his counsel was deficient for failing to obtain physical evidence from the victim's couch and floor to support his argument that the sex was consensual, Docket 1, page 103 (A-76).  Petitioner does not state what sort of physical evidence he expects could be found which would support his allegation that the sex was consensual, and the

20

Court cannot conceive of any such physical evidence which would provide the support that Petitioner desires.  Therefore, Petitioner's counsel was not ineffective under Strickland, and relief is denied.  See Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989) (stating that speculation as to what someone might have testified to "is simply inadequate to 'undermine confidence in the outcome'").

Next, Petitioner complains of his attorney's failure to have the victim's toothbrush tested for DNA to prove that it was her toothbrush.  Id. at 111 (A-83).  The victim admitted on cross-examination that she kept many personal items at Petitioner's apartment, and she specifically admitted that Exhibit M, a toothbrush, belonged to her.  Trial Transcript, Volume II, page 10-16.  Therefore, Petitioner was not prejudiced by any alleged failures of his attorney to conduct DNA testing on the toothbrush, and relief on this ground is denied.

Petitioner issues several complaints about his attorney's failure to secure additional DNA evidence.  Docket 1, page 123 (A-93, testing of victim's oral and neck swabs to show that Petitioner's DNA was present in support of his argument that the contact was consensual); 124 (A-94, testing of the mixed DNA samples from Petitioner's bedspread in support of his argument that he had an extended relationship with the victim); 130 (A-98, DNA testing of Petitioner's vehicle's passenger seat to "prove another location of consensual sex" between Petitioner and victim); 166 (A-134, involving DNA testing of all 27 DNA samples from Petitioner's bedspread).

Such decisions regarding DNA testing fall within the general presumption of reasonable trial strategy.  English, 998 F.2d at 613.  Petitioner has given this

21

Court no grounds to conclude that his attorney's decisions regarding DNA testing demonstrated a failure to exercise the degree of skill and diligence of a reasonably competent attorney in similar circumstances.  Strickland, 466 U.S. at 687. Further, Petitioner cannot establish prejudice for these alleged failures, as the absence of the DNA evidence Petitioner seeks does not call into doubt the ultimate result of the trial.  Williams v. Taylor, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Even if this DNA evidence had been obtained and even if it could have supported Petitioner's allegations of a consensual relationship, this would not have necessarily contradicted the victim's version of events on June 3, 2002, in light of the significant evidence in support of Petitioner's conviction.  For these reasons, Petitioner's claims on these grounds are denied.

Finally, Petitioner claims that his attorney "failed to provide adequate funding for my defense, such as for DNA tests and/or forensic tests and/or expert witnesses."  Docket 1, page 168 (A-137).  As this Court has concluded that Petitioner's attorney was not deficient in failing to secure additional DNA or expert testimony, and that Petitioner was not prejudiced by any lack of expert testimony or DNA evidence, the Court does not credit Petitioner's argument that his defense was inadequately funded.  Accordingly, the state court was not in error in refusing relief on this ground, and this Court does the same.

**A-115: Failure to Depose State's Witnesses**

Next, Petitioner argues that his attorney's failure to interview or depose the state's witnesses prior to trial prevented him from adequately preparing for his defense.  Docket 1, page 147 (A-115).  Relief on this ground is denied.  Other than

22

general references to adequate preparation for his defense, Petitioner cites to no harms which arose from any alleged failures of his attorney to prepare for trial, and thus he can show no prejudice regarding his attorney's alleged failures. Strickland, 466 U.S. at 694.  Further, while SDCL § 23A-12 discusses the procedures for depositions in criminal cases, depositions are to be taken in "exceptional circumstances" for the purposes of preserving testimony for use at trial.  SDCL § 23A-12-1.  As Petitioner does not advance any arguments regarding the exceptional circumstances which allegedly justified depositions in his case, the Court does not believe that his counsel's failure to depose various state witnesses prior to trial falls below the prevailing professional norms.  Strickland, 466 U.S. at 688.  As Petitioner cannot show either prejudice or deficient performance, the state court's denial of relief on this ground was proper.

### A-131: Robin Heintzelman

Petitioner next complains of his attorney's failure to investigate Robin Heintzelman "for exculpatory mitigating evidence" to be presented at his sentencing.  Docket 1, page 163 (A-131).  It appears that the State presented evidence regarding Petitioner's alleged assault of Heintzelman at his sentencing, and Petitioner states that his attorney was deficient for failing to "establish before sentencing that Heintzelman's accusations were false."  Id.  This assault seems to be the foundation of a criminal case, in which a trial was held on February 10-11, 2004.  Id. (referencing State v. Warfield, Cr. 03-2970).

Petitioner is not entitled to relief on this ground, as he has failed to make any demonstration that he was prejudiced by these alleged deficiencies of his

23

attorney.  Other than saying generally that he was prejudiced, Petitioner does not allege any specific facts of how the alleged assault of Heintzelman affected his ultimate sentence.  Petitioner does not allege, and the Court does not believe, that any enhancement to Petitioner's sentence was applied because of the alleged assault of Heintzelman.  Indeed, the Court's review of the judgment demonstrates that the sentences given to Petitioner on his various charges are all below the mandatory sentences discussed in SDCL § 22-6-1.  <u>See</u> Judgment of Conviction, October 14, 2003 (sentencing Petitioner to 1 year for stalking (SDCL § 22-19A-1), 15 years for burglary (SDCL § 22-32-1(1)), 40 years for kidnapping (SDCL § 22-19-1(2)), and 10 years for rape (SDCL § 22-22-1(2))).  As Petitioner cannot show that he was prejudiced by these alleged deficiencies of his attorney at sentencing, he is unable to establish that the  state court was in error for refusing relief on this ground.  This Court similarly denies the requested relief.

**A-164: Hope Munsch**

Finally, Petitioner argues that his attorney was constitutionally deficient for failing to investigate or cross-examine Hope Munsch regarding her "personal knowledge that when [the victim] is in fear of physical injury and death, she will run and would not be frozen with fear to do nothing."  Docket 1, page 202 (A-164).  Such information, claims Petitioner, would have challenged the victim's testimony that she was frozen with fear during the kidnapping, which would have "established reasonable doubt . . . and . . . changed the outcome at my trial."  <u>Id.</u> at 203.

24

Given the overwhelming amount of testimony from the victim regarding the events of June 3, 2002, as well as the supporting testimony of law enforcement and medical staff who witnessed her immediately after the kidnapping and rape, the Court does not believe that Petitioner can show he was prejudiced by any alleged failures of his attorney in relation to Munsch's testimony.  Petitioner's attorney also cross-examined the victim regarding her statements that Petitioner prevented her from leaving her apartment. Trial Transcript, Volume II, pages 52-68.  Even if the trial court may have found Munsch's testimony relevant, any statements from Munsch regarding the victim's pattern of conduct in emergency situations are not of the sort to cast into doubt the ultimate outcome of the trial, as required by Strickland.  Mansfield, 202 F.3d at 1022 (stating that petitioner "must establish a reasonable probability that he would have been acquitted absent the allegedly unprofessional error").   Accordingly, the state court was not in error for its refusal to grant habeas relief on this ground, and this Court similarly denies relief.

## CONCLUSION

After reviewing all of the remaining claims in Petitioner's petition under 28 U.S.C. § 2254, the Court concludes for the reasons stated above that the South Dakota Supreme Court's refusal to grant habeas relief to Petitioner did not involve an unreasonable application of clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).  Therefore, this Court cannot grant relief on any of

the claims previously rejected by the state court.  Accordingly, Petitioner's petition is dismissed in its entirety.

For the reasons stated above, it is hereby

ORDERED that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is hereby DISMISSED.

Dated January 29, 2009.

BY THE COURT:

/s/ Andrew W. Bogue

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE